IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDREW JAMES MCGONIGLE,                )
*on behalf of himself and*             )
*others similarly situated,*           )
                                       )
                                       )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Civil Action No. 1:25-cv-01062 (RDA/IDD)
                                       )
                                       )
DICKEY'S BARBECUE                      )
RESTAURANTS, INC.,                     )
                                       )
        Defendant.                     )

---

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Dickey's Barbecue Restaurant, Inc.'s ("Defendant") Motion to Dismiss, *or in the alternative*, Strike (the "Motion"). (Dkt. 14). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Complaint (Dkt. 1), Defendant's Motion (Dkt. 14), the Memorandum in Support (Dkt. 15), Plaintiff's Opposition (Dkt. 17), and Defendant's Reply (Dkt. 22), the Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the following reasons.

1

## I. BACKGROUND

### A. Factual Background[1]

This action arises out of Plaintiff Andrew James McGonigle's allegations that he received unsolicited texts promoting Defendant Dickey's Barbecue Restaurants, Inc., in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(c)(5). Dkt. 1 ¶¶ 1, 2. Plaintiff, as putative class representative, alleges that he received a new telephone number on August 5, 2024. *Id.* ¶ 8. That same day, Plaintiff registered his cell phone number ((804) 238-XXXX) with the Federal Trade Commission's ("FTC") Do Not Call ("DNC") Registry. *Id.* ¶ 11. The number (804) 238-XXXX has been on the DNC Registry since 2014. *Id.*

Plaintiff further alleges that between August and October 2024, Plaintiff received at least five text messages from Defendant, advertising its business and services. *Id.* ¶¶ 17, 19, 21. Additionally, Defendant allegedly delivered at least three text messages to Plaintiff on October 3 and October 8, 2024, thirty-one days or more after Plaintiff registered his cell phone number with the DNC Registry. *Id.* ¶ 18. The messages were intended for someone other than Plaintiff. *Id.* ¶ 20. Plaintiff did not give Defendant prior consent to send him advertisements or soliciting messages. *Id.* ¶ 22. Plaintiff did not request the promotional information from Defendant. *Id.* ¶ 23.

Plaintiff alleges that he has been the regular and sole user of his telephone number since inheriting the number on August 5, 2024. *Id.* ¶ 8. Plaintiff does not have a landline or any other telephone number besides (804) 238-XXXX. *Id.* ¶ 14. He uses the number for personal use only, as one would use a residential landline. *Id.* ¶ 14. Plaintiff allegedly uses his cell phone primarily

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

to communicate with friends and family, to schedule personal appointments, and for other household purposes. *Id.* ¶ 15. Plaintiff further claims that he does not use the telephone number for any business or commercial purposes. *Id.* ¶ 10. Plaintiff alleges that he personally pays for his cell phone plan and is not reimbursed by a business. *Id.* ¶ 16.

Plaintiff alleges that the unsolicited text messages caused him to suffer actual harm through an "invasion of privacy, an intrusion into his life, and a private nuisance." *Id.* ¶ 24. Plaintiff claims that, upon information and good faith belief, Defendant either knew or should have known that Plaintiff's cell phone number was listed on the DNC Registry. *Id.* ¶ 25.

### B. Procedural Background

Plaintiff filed his Complaint on June 24, 2025. Dkt. 1. On September 29, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint, *or in the alternative*, Strike. Dkt. 14. The same day, Defendant filed a Memorandum of Law in support of its Motion to Dismiss. Dkt. 15. On October 13, 2025, Plaintiff filed an Opposition to the Motion to Dismiss. Dkt. 17. On October 20, Defendant filed its Reply. Dkt. 22.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de*

*Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### B. Motion to Strike Standard

Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous mater." Fed. R. Civ. P. 12(f). Rule 12(f) is intended to "avoid the expenditure of time and money that may arise from litigating spurious issues by dispensing with those issues prior to trial." *Gregory v. Belfor USA Grp., Inc.*, 2012 WL 2309054, at *1 (E.D. Va. June 15, 2012) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Motions to strike at the pleading stage "are viewed with disfavor and are granted only for egregious violations." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). However, a district court has "considerable discretion" in deciding whether to strike matters from pleadings. *Fischer v. Fort Belvoir Residential Communities LLC*, 2023 WL 5352297, at *3 (E.D. Va. Aug. 21, 2023).

Rule 23(d)(1)(D) provides that "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts rarely grant motions to strike

4

under Rule 23(d)(1)(D) before discovery and do so "only where [n]o amount of additional class discovery will alter th[e] conclusion that the class is not maintainable." *Zahran v. Bank of Am., N.A.*, 2021 WL 2226491, at *3 (W.D.N.C. June 2, 2021) (quoting *Thompson v. Merck & Co., Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)) (citations omitted) (denying a 23(d)(1)(D) Motion to Strike at pleading stage and opting to revisit class certification issues at a later stage). In a recent decision, the Fourth Circuit indicated that it considers Rule 23(d)(1)(D) to be "an optional housekeeping provision that comes into play only after the district court has made its mandatory class certification decision under Rule 23(c)(1)(A)." *Oliver v. Navy Fed. Credit Union*, 167 F.4th 106, 111 (4th Cir. 2026). The Fourth Circuit has held that the proper procedure for a Defendant to challenge class certification at the pleading stage is to move to strike under Rules 23(c)(1)(a)[2] and 23(d)(1)(D) if class certification is denied. *Id.*

## III. ANALYSIS

Defendant's Motion seeks to dismiss the Complaint in its entirety. Failing that, Defendant seeks to strike the class allegations. The Court will analyze each aspect of the Motion in turn.

### A. Motion to Dismiss

Section 227(c) of the TCPA creates a private right of action for individuals who "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" the TCPA's DNC Registry regulations. 47 U.S.C. § 227(c)(5). Such regulations, in turn, prohibit any person or entity from initiating "any telephone solicitation to . . . [a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2) (emphasis added). A telephone solicitation is "the initiation

---

[2] Rule 23(c)(1)(a) notes "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(a).

of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C § 227(a)(4).

Defendant seeks dismissal on three grounds: (1) cell phones are not "residential" under the TCPA, (2) even if cell phones could be residential, Plaintiff did not sufficiently allege that his specific cell phone was used residentially, and (3) Plaintiff did not allege that Defendant willfully and knowingly violated the TCPA. Dkt. 14 at 1. Defendant's first two grounds for dismissal fail. Defendant fares better with respect to its last argument, but the failure to allege facts sufficient for treble damages does not require dismissal.

1. *Defendant's Argument that Cell Phone Owners Cannot be Considered "Residential Telephone Subscribers" Fails*

Defendant first contends that Plaintiff's case should be dismissed because the TCPA applies only to "residential telephones" and the phone on which Plaintiff received the solicitations is cellular. Dkt. 15 at 7. Defendant therefore argues that Plaintiff's cellular phone is not protected by the statute. Defendant's narrow interpretation of the statute is incorrect.

Although the Fourth Circuit has not yet addressed this question, this District Judge has already indicated a view on the resolution of this issue. *See Clemens v. Consumer Sol. Ctr.*, 2025 WL 2604494, at *13 n.6 (E.D. Va. July 14, 2025) (noting that "a cell phone may plausibly be alleged as residential for purposes of the TCPA"), *report and recommendation adopted*, 2025 WL 2427685 (E.D. Va. Aug. 22, 2025). This Court's decision in *Clemens* follows the majority view in this Circuit. *See Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *3 (M.D.N.C. Aug. 12, 2024) ("[T]he vast majority of recent cases that have considered this issue, in this Circuit and others, have found that a cell phone may plausibly be alleged in a complaint to be residential, and thus covered by the TCPA."), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C.

6

Sept. 13, 2024); *Tessu v. AdaptHealth, LLC*, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones . . . are entitled to the TCPA's protection as residential telephones."); *Davis v. Reliance First Cap., LLC*, 2023 WL 1982354, at *4 n.1 (E.D.N.C. Feb. 13, 2023) (noting a claim that a plaintiff received solicitations on a residential cellular telephone was sufficient to survive a motion to dismiss under the TCPA); *Boardman v. Green Dot Corp.*, 2021 WL 3699856, at *3 (W.D.N.C. Aug. 19, 2021) (finding "a cellphone may plausibly be alleged as residential for purposes of the TCPA"); *see also Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021) (holding that because the plaintiff pleaded that her cell phone number was registered on the DNC Registry, which is only open to residential subscribers, the plaintiff sufficiently pleaded that her cell phone was residential and survived the motion to dismiss), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021). Indeed, the Court notes that, in deciding that a cell phone could be residential, the district judge in *Hudson* relied on the jury instructions from a case in which a TCPA verdict was affirmed by the Fourth Circuit. *See* 2024 WL 4190513, at *4. In particular, the *Hudson* Court noted that the instructions for the verdict ultimately affirmed by the Fourth Circuit specifically instructed: "if it is [a] cell phone primarily used for personal calls, similar to the use of a residential landline, then it would be a residential number." *Id.*

This approach is also consistent with the applicable regulatory provisions and FCC interpretation. In this regard, the statutory language of Section 227 does not explicitly preclude a cell phone from being considered a "residential telephone." *Cacho v. McCarthy & Kelly LLP*, 2024 WL 3293628, at *5-9 (S.D.N.Y. July 3, 2024) (undertaking extensive analysis of the statutory text). Further, the private right of action created under Section 227(c)(5) of the TCPA is

7

premised on a "violation of the regulations prescribed under this subsection." As relevant here, subsections (c)(2) and (d) of those regulations prohibit an entity from calling a person on the national Do-Not-Call registry or on the entity's internal do-not-call list, respectively. As the *Hudson* Court set forth, those same regulations also unambiguously state that the rules set forth in these subsections "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone." 2024 WL 4190513, at *4 (citing 47 C.F.R. § 64.1200(e)). Those Rules and Regulations specifically take into account that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service . . ." and recognize that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14038-39 (2003) (internal footnotes omitted). Thus, the use of "residential" in the TCPA is not intended to preclude protections for cellular phones. Accordingly, the Motion will be denied in this regard.

### 2. *Defendant's Argument that Plaintiff Did Not Allege that His Cell Phone Was Used for Residential Purposes Similarly Fails*

Defendant next argues that, even if a cell phone can be residential, Plaintiff did not properly allege that his personal cell phone was used residentially. Dkt. 14 at 1. A review of the Complaint, however, demonstrates that Plaintiff has sufficiently alleged that his cell phone was used residentially.

To properly allege that one is a "residential telephone subscriber," a Plaintiff must set forth "clear and direct allegations regarding the residential telephone number implicated and any relevant do-not-call registry information associated with that specific phone number." *Lawson v. Nations Health Grp., Inc.*, WL 5103503, at *3 (S.D. Fla. Aug. 8, 2024). The plaintiff must allege

8

more than mere conclusory statements that their phone is used for personal reasons and not associated with a business. *Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at \*5 (E.D. Va. Aug. 6, 2020). Here, Plaintiff alleges that he uses his cell phone primarily to communicate with friends and family, to schedule personal appointments, and for other household purposes. Dkt. 1 at ¶ 15. Plaintiff further claims that he does not use the telephone number for any business or commercial purposes. *Id.* ¶ 10. Plaintiff also notes that he personally pays for his cell phone plan and is not reimbursed by a business. *Id.* ¶ 16.

District courts across circuits have found allegations that a cell phone is primarily used to talk with friends and family and conduct household chores, as Plaintiff claimed, sufficient to plead residential use at the motion to dismiss stage. *See Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1058 (D. Colo. 2023) (finding allegations that the plaintiff used her cell phone "primarily for residential purposes, such as talking with friends and family sufficient to avoid dismissal"); *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1251 (D.N.M. 2024) (finding allegations that a phone was used for "personal, household, and residential needs" sufficient to avoid dismissal, even without detailed claims about how the phone was used or whether the plaintiff had more than one phone); *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1319 (N.D. Ga. 2024) (holding allegations that a cell phone was on the DNC Registry and was used as a "personal residential number and not for any business or commercial purpose" sufficient to survive dismissal). Indeed, the decision in *McGonigle v. Shopperschoice.com LLC* almost entirely mirrors the present case. *See* 2026 WL 413198, at \*1 (M.D. La. Feb. 13, 2026). There, this same Plaintiff (Andrew James McGonigle) filed suit against Shopperschoice.com LLC and described his residential phone in the same manner. *Id.* There, the district judge noted that the Plaintiff had sufficiently alleged that he is the sole user of the phone, that it is his only phone, that

9

the phone is used for personal and household purposes rather than for business purposes, and that the phone is primarily used to communicate with friends and family, schedule personal meetings, and other household uses. *Id.* at *7. It is unclear what more Plaintiff could allege to establish that his phone is used for residential purposes. Accordingly, the Motion will be denied in this regard.

### 3. *Treble Damages Are Improper*

Defendant next argues that treble damages are improper. Under 47 U.S.C. § 227(c)(5), a "court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)," if "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection." Defendant asserts that Plaintiff has not alleged that Defendant "willfully or knowingly violated" the TCPA. Dkt. 14 at 1. As a result, according to Defendant, treble damages are improper, and the Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). *Id.* On the one hand, Defendant is correct that Plaintiff has failed to plausibly allege that Defendant willfully or knowingly violated the TCPA. On the other, treble damages are a form of relief and, therefore, not subject to a 12(b)(6) Motion to Dismiss. *Koeller v. Cyflare Sec., Inc.*, 2025 WL 3280316, at *2 (E.D. Mo. Nov. 25, 2025) (finding a treble damages argument "misplaced" as "treble damages . . . 'are a form of relief and thus not a claim subject to a Rule 12(b)(6) motion to dismiss'" (quoting *R. L. Mlazgar Assocs., Inc. v. Focal Point, LLC.*, 2024 WL 4544097, at *8 (D. Minn. June 14, 2024))); *see Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020) ("Because statutory and treble damages are remedies, not causes of action, a Rule 12(b)(6) motion is an improper vehicle for dismissing these specific requests for relief.")

A more sensible reading of Defendant's position is that Plaintiff's prayer for treble damages should be dismissed. A "finding of willfulness does not require bad faith, it does require

10

that the caller 'have reason to know, or should have known, that his conduct would violate the statute.'" *Krakauer*, 2017 WL 2242952, at *9 (quoting *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899–901 (W.D. Tex. 2001). In his Complaint, Plaintiff alleges that "upon information and good faith belief, Defendant knew, or should have known, that his telephone number was registered with the DNC Registry." Dkt. 1 at 6. Apart from that conclusory allegation, Plaintiff has failed to allege any facts supporting that Defendant knew or should have known that its conduct would violate the TCPA, or that its conduct was more than negligent.[3] Dkt. 1 at 6; *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 755 (W.D. Tex. 2011) (refusing to award treble damages because "there was no evidence [the defendant] knowingly disregarded [the plaintiff's] revocation of consent, nor was there any evidence [the defendant] knew or should have known it was violating the TCPA"). Without alleging more than conclusory statements that the Defendant knew, or should have known, that Plaintiff's phone number was on the DNC Registry, Plaintiff fails to plausibly allege that Defendant willfully and knowingly violated the TCPA. Because Plaintiff has not plausibly alleged treble damages, the Court will dismiss the claim for treble damages.

---

[3] Plaintiff, in his Opposition, defended his assertion that the Defendant knew or should have known that its conduct was in violation of the TCPA by noting the Defendant knowingly chose not to subscribe to the Federal Communications Commission's Reassigned Number Database. Dkt. 17 at 16-17. The Reassigned Number Database, according to Plaintiff, is a database of telephone numbers for companies to use to avoid making solicitations to reassigned telephone numbers, especially those registered with the DNC Registry. *Id.* However, the Reassigned Number Database, and Defendant's lack of subscription thereof, is not discussed in Complaint and, therefore, cannot be considered here. *See* Dkt. 1; *Oku v. Trumbull Ins. Co.*, 2026 WL 801263 (E.D. Va. Mar. 23, 2026) (recognizing that "it is axiomatic that a Plaintiff may not amend their complaint through an opposition brief"); *see also Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'").

B. Motion to Strike Class Allegations

Defendant challenges the class allegations on two grounds: 1) the class definitions are impermissibly "fail-safe" and 2) the purported class impermissibly creates individualized inquiries. Dkt. 14 at 1-2. The Court addresses both arguments in turn.

1. *Plaintiff's Class is not Impermissibly "Fail-Safe"*

A fail-safe class is one "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 930-31 (4th Cir. 2025) (citing *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)). Put simply, a fail-safe class requires the court to reach legal conclusions on the validity of a person's claim to determine whether the person belongs in the class. *See Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015). The proposed class for the present case includes individuals whose numbers are listed on the DNC Registry. Dkt. 1 ¶ 26. Plaintiff contends that this is not a fail-safe class because membership could be determined without reaching any legal conclusions. Dkt. 17 at 18-19. Defendant asserts that when a class is defined to include individuals who did not consent to phone calls under the TCPA, the class is fail-safe. Dkt. 15 at 10.

In *Krakauer v. Dish Network, L.L.C.*, the Fourth Circuit affirmed certification of a class defined as all persons whose telephone numbers were listed on the national DNC Registry for at least 30 days and who received solicitations from the Defendant. *See* 925 F.3d 643, 654 (4th Cir. 2019). The *Krakauer* Court held that common issues "clearly predominated" over individual issues and "all of the major issues in the case could be shown through aggregate records," including when calls were made, whether they connected, and to which numbers they were directed. *Id.* at 658. The *Krakauer* Court established that, when text message logs and DNC Registry data can

identify class members without reliance on impermissible individualized inquiries, a DNC Registry-based text message class could survive fail-safe challenges. *Id.* at 658-59.

Similar to *Krakauer*, membership here could be determined without reaching legal conclusions. Plaintiff notes that objective and factual questions could be asked to determine class membership, including whether Defendant sent messages to numbers on the National DNC Registry, whether those numbers were called two or more times in a 12-month period, whether those numbers were residential, and whether those who received Defendant's messages provided those telephone numbers to Defendant. *See* Dkt. 17 at 18-19. Plaintiff's proposed objective questions could be answered with what the *Krakauer* Court determined to be objective aggregate data: records of when messages were sent, to which numbers the messages were sent to, and if the messages were received. *Krakauer*, 925 F.3d at 658. As a result, it is possible that membership in Plaintiff's class could be determined by objective criteria. *Id.* Furthermore, the proposed class would not necessarily consist solely of people who would prevail on the merits. For instance, individuals who provided express consent to Defendant before receiving the messages would not prevail on the merits.

Given the objective criteria that the present class can be determined by, as well as the similar criteria between the classes in *Krakauer* and the instant case, Plaintiff's class cannot be found to be impermissibly fail-safe at this time.

### 2. *The Class Does Not Create Individualized Inquiries*

A recent decision from the Fourth Circuit has cautioned district courts against granting motions to strike at the pleadings stage. *See Oliver*, 167 F.4th at 112. In so doing, the Fourth Circuit indicated that a district court may *only* deny class certification at the pleading stage if the Plaintiff's class action allegations show "non-compliance with Rule 23 as a matter of law." *Id.*

13

(quoting *Goodman v. Schlesinger*, 584 F.2d 1325 (4th Cir. 1978)). Heeding guidance from the Fourth Circuit, district judges in this District have also emphasized that motions to strike at the pleading stage "are viewed with disfavor and are granted only for egregious violations." *Hill v. Pepperidge Farm, Inc.*, 2022 WL 3371321, at *2 (E.D. Va. Aug. 16, 2022); *see also Fobbs v. Hunt*, 2021 WL 1792087, at *14 (E.D. Va. May 5, 2021) (noting motions to strike class allegations at the pleading stage are rarely granted, as "whether a class action can be maintained . . . normally requires a review of more evidence and argument than a complaint can provide"). Rule 23(a) has four prerequisites for class actions: numerosity, commonality,[4] typicality, and adequacy. Fed. R. Civ. P. 23(a). Rule 23(b) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Although Defendant cites Rules 12(f) and 23(d)(1)(D) generally in its Motion, Defendant does not specify which Rule 23(a) or (b) requirement is not established. Thus, in the face of such recent authority from the Fourth Circuit and the disfavored nature of a motion to strike class allegations at this early stage, Defendant's generalized arguments are unpersuasive. Accordingly, the Motion is denied in this regard.

## IV. CONCLUSION

Accordingly, it is hereby

ORDERED Defendant's Motion to Dismiss (Dkt. 14) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted insofar as the treble damages are dismissed. The Motion is otherwise denied; and it is

---

[4] Plaintiff alleges that the common issues of law and fact are: (1) Defendant's conduct and practice as it relates to delivering or causing to be delivered marketing and advertising text messages, (2) Defendant's practice of delivering, or causing to be delivered, telemarketing messages to phone numbers registered on the DNC Registry, (3) "Defendant's violations of the TCPA," and (4) "the availability of statutory penalties. Dkt. 1 ¶ 44.

14

FURTHER ORDERED that Plaintiff must file any Amended Complaint within FOURTEEN (14) DAYS of the entry of this Memorandum Opinion and Order. If Plaintiff fails to file an Amended Complaint by that date, the Court will assume that Plaintiff is foregoing any claims to treble damages.

It is SO ORDERED.

Alexandria, Virginia
July ___22___, 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge